IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Criminal Action No. 23-31-MN |
| | ) |
| EDUARDO FELIX, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM ORDER**

At Wilmington, this 1st day of May 2024:

On February 22, 2024, Defendant Eduardo Felix ("Defendant") submitted a Motion to Suppress Evidence ("Motion to Suppress"). (D.I. 206). On March 14, 2024, the government submitted a response. (D.I. 228). On April 2, 2024, the Court conducted a hearing ("the evidentiary hearing") regarding the issues raised. The Court has reviewed the filings and arguments presented. For the reasons set forth in this order, Defendant's Motion to Suppress is DENIED.

**I.   BACKGROUND**

Defendant moves to suppress evidence collected and statements made during a traffic stop on March 5, 2023. (D.I. 206 at 1-2). On that date, the Federal Bureau of Investigation Violent Crimes Task Force ("the Task Force") was monitoring 900 North Madison Street in Wilmington as part of a drug investigation. (D.I. 206-1 at 2-3). At approximately 2:00 p.m. one of the Task Force's members, New Castle County Police Detective Andrew Rosaio ("Rosaio"), watched a live video feed of Defendant arriving at this address in a white Honda Civic. (D.I. 267 ("Tr.") at 6:5-7:9, 11:17-11:24; D.I. 206 at 2). Rosaio observed Defendant enter the residence, exit, retrieve a black backpack from the Civic, return to the residence, then exit with the backpack and leave the

location in the Civic. (Tr. at 11:17-12:3; D.I. 206-1 at 3). Rosaio broadcast his observations to other Task Force members and advised them "that we would like that vehicle stopped." (Tr. at 10:20-10:23).

Another Task Force member, New Castle County Police Officer Zachary Makuch ("Makuch"), received this advisory and observed Defendant traveling northbound on Interstate 95. (D.I. 206-1 at 2-3). Makuch followed Defendant in a marked police car. (Tr. at 9:13-9:16, 14:18; GX 1-A). He observed Defendant begin to change lanes, but only activate his turn signal when partway over. (Tr. 17:7-17:15; D.I. 206-1 at 3).[1] Delaware law requires a motorist to activate his or her turn signal at least 300 feet before changing lanes. 21 Del. C. § 4155(b). Makuch pulled Defendant over at approximately 3:45 p.m. (GX 1-A at 00:30). New Castle County Police Officer Christopher Nikituk ("Nikituk"), who had been following in a separate vehicle, also pulled over. (*Id.*; D.I. 228 at 2).

Makuch informed Defendant that he had been pulled over for changing lanes without signaling and requested Defendant's driver's license and proof of insurance.[2] (GX 1-A at 00:38-00:59). For about two minutes, Makuch questioned Defendant about his trip's origin and destination while Defendant looked through several envelopes in his vehicle's passenger seat. (GX 1-A at 00:59-2:55). Defendant then opened his car's glove compartment to reveal a green object that Makuch believed, based on his experience, to be a marijuana grinder. (GX 1-A at 2:54-2:59; Tr. at 22:18-23:19). Makuch asked Defendant what the green object was and Defendant

---

[1] Defendant claims that he changed lanes because Makuch got "behind and very close" to his vehicle (D.I. 206 at 2), but does not dispute that he began to change lanes before activating his signal.

[2] The exchange between Makuch and Defendant, from the time Makuch exited his vehicle, was recorded by Makuch's body camera. At the evidentiary hearing, this video was admitted into evidence as Government Exhibit 1-A ("GX 1-A"). (Tr. at 36:6-36:13).

2

confirmed that it was his grinder. (GX 1-A at 2:54-2:59). At Makuch's instruction, Defendant handed the grinder to Nikituk, who by then was standing outside the driver's-side window. (GX 1-A at 3:00-3:05). Defendant was then directed to exit the vehicle and placed in handcuffs. (GX 1-A at 2:59-3:49). At this point in the encounter, Makuch said into his radio, "we got PC." (GX 1-A at 3:00-3:05). Makuch explained at the evidentiary hearing that by this he meant "probable cause." (Tr. at 31:16-31:25).

Makuch then informed Defendant that: (1) marijuana was decriminalized in Delaware but could only be obtained with a medical marijuana card; (2) Makuch had seen marijuana residue in the grinder; and (3) Defendant was "being detained for a probable cause search" of himself and his vehicle. (GX 1-A at 3:49-4:08).

Once Defendant had been moved to Makuch's police car, Makuch and Nikituk began searching Defendant's Civic. (GX 1-A at 5:05). Makuch removed a dark gray backpack from behind the front passenger seat and unzipped it to find a large amount of cash. (GX 1-A at 6:05-6:20). After being read his *Miranda* rights, Defendant gave conflicting statements about how long he had had the money and what it was for. (D.I. 206-1 at 3-4). The cash was seized and logged into evidence. (D.I. 206-1 at 4). It was later totaled at $59,460. *Id*.

Defendant has been charged with one count of conspiring to distribute, and conspiring to possess with intent to distribute, cocaine, fentanyl, methamphetamine, and marijuana, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C). (D.I. 19 at 1-2). The government has alleged that Defendant travelled to the District of Delaware to deliver cocaine to and collect drug proceeds from Gregory Carter and Alturo Smith, who were also charged on this count and others. (D.I. 19 at 5-28). Defendant Felix filed the instant motion to suppress on February 22, 2024. (D.I. 206 at 1).

## II.     LEGAL STANDARDS

The Fourth Amendment prohibits "unreasonable searches and seizures." U.S. Const. amend. IV. Evidence obtained from an unreasonable search or seizure "must be suppressed as 'fruit of the poisonous tree.'" *United States v. Bey*, 911 F.3d 139, 144 (quoting *United States v. Brown*, 448 F.3d 239, 244 (3d Cir. 2006)).

"A traffic stop, however brief, constitutes a seizure under the Fourth Amendment and is subject to review for reasonableness." *United States v. Hunter*, 88 F.4th 221, 224 (3d Cir. 2023) (citing *Whren v. United States*, 517 U.S. 806, 809-10 (1996) and *United States v. Clark*, 902 F.3d 404, 409 (3d Cir. 2018)). "Courts must review [a traffic stop's] reasonableness through an objective lens, and should not consider the actual or subjective intentions of the officer involved." *Hunter*, 88 F.4th at 224 (3d Cir. 2023) (citing *Whren*, 517 U.S. at 813 and *Ohio v. Robinette*, 519 U.S. 33, 39 (1996) (internal citations omitted)).

"A defendant seeking to suppress evidence seized in a search 'bears the burden of proving not only that the search . . . was illegal, but also that he had a legitimate expectation of privacy' in the subject of the search." *United States v. Donahue*, 764 F.3d 293, 298 (2014) (quoting *Rawlings v. Kentucky*, 448 U.S. 98, 104 (1980)). The Third Circuit has stated that the defendant must prove a that a search was illegal. *Donahue*, 764 F.3d at 298. With a warrantless search, however, the government bears the burden of proving that the search was reasonable. "Generally, for a search or seizure to be reasonable under the Fourth Amendment, it must be effectuated with a warrant based upon probable cause." *Bey*, 911 F.3d at 144-45. "Warrantless searches and seizures are presumptively unreasonable unless the Government satisfies its burden of establishing that one of the exceptions to the warrant requirement applies." *Id*. at 145 (citing *California v. Acevedo*, 500 U.S. 565, 580 (1991)).

## III. DISCUSSION

Defendant argues that the initial traffic stop was unjustifiable, that the marijuana grinder did not give rise to the probable cause required to search Defendant's vehicle, and that "all statements made by the Defendant were the result of the illegal detention/search and should also be suppressed as fruits of the poisonous tree." (D.I. 206 at 5-6). The Court cannot accept these arguments.

### A. The Traffic Stop Was Permissible Under the Fourth Amendment

Although a traffic stop is a "seizure" under the Fourth Amendment, *Hunter*, 88 F.4th at 224, a "police officer who observes a violation of state traffic laws may lawfully stop the car committing the violation." *United States v. Bonner*, 363 F.3d 213, 216 (3d Cir.2004) (citing *Pennsylvania v. Mimms*, 434 U.S. 106, 109 (1977)). Officer Makuch testified under oath that he saw Defendant change lanes before activating his car's turn signal (Tr. at 17:4-17:15) in violation of Delaware traffic laws. *Id. See also* 21 Del. C. § 4155(b) ("A signal of intention to turn or move right or left when required shall be given continuously during not less than the last 300 feet or more than 1/2 mile traveled by the vehicle before turning").

The Motion to Dismiss argues that:

> "The officer cannot justify stopping the Honda Civic for failing to signal because he caused [Defendant] to change lanes rapidly. This is a critical point because if the police officers caused [Defendant] to change lanes, then the traffic stop would be illegal. This is similar to creating exigent circumstances and then using said exigent circumstances to justify a warrantless search."

(D.I. 206 at 5)

This argument, however, fails. Neither Defendant nor this Court have identified any law to suggest that a fast approach from behind, even if that occurred, would excuse Defendant from

his duty to signal, or amount to creating exigent circumstances. (Tr. at 38:22-39:9). Therefore, regardless of whether Makuch's actions prompted Defendant's lane change, the stop was lawful.

Defendant also points out that "there is no independent evidence that Mr. Felix did not timely put the turning signal [sic] or that the Police Officers did not cause Mr. Felix to change lanes rapidly." (D.I. 206 at 5). Makuch did indeed testify that his car's dash cam was not functioning at the time of the stop. (Tr. at 18:19-18:25, 33:21-33:23). Yet neither Defendant nor this Court have identified any rulings that the Fourth Amendment only permits traffic stops whose precipitating events were captured on video. (Tr. at 37:1-37:10). In fact, this notion has been rejected by at least one other district court in the Third Circuit. *See United States v. Washington*, No. 3:20-CR-00047, 2021 WL 1588971 at *5-*7 (M.D. Pa. Apr. 22, 2021) (upholding traffic stop even after noting that dash cam video "does not capture the highway conditions at the precise moment [the officer] observed the alleged traffic violation"). For these reasons, the Court finds the stop to have been permissible under the Fourth Amendment.

**B.     The Search of Defendant's Vehicle Did Not Violate the Fourth Amendment**

Defendant also argues that "the searches of the Defendant, the vehicle, and the containers found in the car were illegal, and all evidence found therein should be suppressed." (D.I. 206 at 6). The Court will assume without deciding that Defendant has made the requisite showing that he had a reasonable expectation of privacy in those places where evidence was found. *See Donahue*, 764 F.3d at 298. To avoid suppression, the government must demonstrate that the search of Defendant's vehicle after the initial stop fell into an exception to the Fourth Amendment's general warrant requirement. *See Bey*, 911 F.3d at 145 (citing *Acevedo*, 500 U.S. at 580). The Court finds that it has done so.

The "automobile exception" to the Fourth Amendment's warrant requirement "allows law enforcement to search a vehicle without a warrant if there is 'probable cause to believe that the

vehicle contains evidence of a crime.'" *United States v. Lackey,* Nos. 20-2977 and 20-2978, 2022 WL 313807 at *2 (3d Cir. Feb. 2, 2022) (quoting *Donahue*, 764 F.3d at 300). "If there was a 'fair probability that contraband or evidence of a crime' would have been found, there was probable cause for the search." *Donahue*, 764 F.3d at 301 (quoting *Illinois v. Gates*, 462 U.S. 213, 231 (1983)).

The search of Defendant's vehicle met this standard. The officers did not begin to search Defendant's vehicle until Defendant confirmed that a green object Makuch had observed through the vehicle's window was a marijuana grinder. (GX 1-A at 2:54-2:59).[3] The Third Circuit has held that "the information obtained as a result of observation of an object in plain sight may be the basis for probable cause or reasonable suspicion of illegal activity." *U.S. v. Stabile*, 633 F.3d 219, 241 n. 17 (3d Cir. 2011) (quoting *Texas v. Brown*, 460 U.S. 730, 739 n.4 (1983)). The Third Circuit has also found that "the smell of marijuana alone, if reasonable and particularized," may establish the probable cause needed for a warrantless vehicle search. *United States v. Rodriguez-Mercado*, 788 Fed.Appx. 97, 100 (3d Cir. 2019) (quoting *United States v. Ramos*, 443 F.3d 304, 308 (3d Cir. 2006)).

---

[3]   Contrary to Defendant's argument, (D.I. 206 at 5-6), he could have been prosecuted for marijuana-related crimes on the date of his stop. Prior to April 23, 2023, possession of a "personal use quantity" of marijuana had been decriminalized in Delaware and made punishable by a civil penalty. *See* H.B. 1, 152nd Leg., 1st Reg. Sess. (Del. 2023) (repealing 16 Del. C. § 4764(c)(1), the decriminalization statute effective on the date of Defendant's stop). Yet possessing "other than a personal use quantity" of marijuana and "consuming marijuana . . . in a moving vehicle" were misdemeanors punishable by fines and imprisonment. *See* Del. H.B. 1 (leaving the penalties for these offenses contained in 16 Del. C. §§ 4764 (b) and (d), respectively, intact). The state marijuana statute then in effect also made clear that "nothing contained herein shall be construed to repeal or modify any law or procedure regarding search and seizure." *See* Del. H.B. 1 (repealing this provision, 16 Del. C. § 4764(h), on April 23, 2023 – more than a month after the stop).

The Court finds that the observation of a marijuana grinder in a vehicle provides at least as much indication as marijuana odor that the vehicle contains evidence of a crime, and provided the probable cause required to search Defendant's vehicle. Furthermore, "if probable cause justifies the search" of a vehicle, "it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *Donahue*, 764 F.3d at 300 (quoting *United States v. Ross*, 456 U.S. 798, 825 (1982)). The officers' search of the vehicle – including Makuch's opening the backpack that contained the cash – was therefore permitted by the Fourth Amendment.

### IV.   CONCLUSION

Makuch lawfully stopped Defendant after observing him violate a traffic law. Makuch's observing a marijuana grinder inside Defendant's car gave him and Nikituk probable cause to search Defendant's vehicle and all bags and containers therein. This search therefore fell within the "automobile exception" to the Fourth Amendment's warrant requirement.[4] As both the stop and the search were lawful, no evidence seized or associated statements made by Defendant can be suppressed.

THEREFORE, for the foregoing reasons, IT IS HEREBY ORDERED that Defendant's Motion to Suppress (D.I. 206) is DENIED.

*[signature: Maryellen Noreika]*
The Honorable Maryellen Noreika
United States District Judge

---

[4]   Having found the stop and search lawful on these grounds, the Court need not consider the government's additional argument that collective knowledge doctrine provided an independent source of reasonable suspicion to pull over Defendant's car and probable cause to search it. (D.I. 228 at 8-9).